UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 20 CR 382 |
| | ) | |
| EDWARD SCHMIDL, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF THE CRIME VICTIM'S
MOTION FOR AN AMENDED RESTITUTION ORDER**

Movants, Steven J. Morton & Associates, Ltd. and Valley Forge Insurance Company, through The Peacock Law Group, submits this reply brief in support of their motion for an amended restitution order. Movants requested a court order providing for three things: (1) adding Valley Forge Insurance (the victim's insurance company) as a secondary restitution payee; (2) adding $5,000 out-of-pocket expenses to the restitution loss amount; and (3) adding $29,402.05 in prejudgment interest to the restitution loss amount. The government's response concedes request number one. Movants are withdrawing their request number two that seeks to add $5,000 to the restitution. Thus, there is no dispute that the restitution order should be revised to include Valley Forge for $25,000 and Morton & Associates award reduced accordingly to $146,708. That leaves request number three, seeking prejudgment interest, as the only contested issue. However, the government's response fails to demonstrate it has constitutional standing to contest Morton & Associates' request, so the court should give the government's objections no weight. Movants will

nonetheless address the government's objections, which lack merit. As there is no other objection, the court should grant its prejudgment interest request.

## Background

***Motion*** Movants sought three forms of relief. Adding Valley Forge as a restitution payee (Motion ¶¶ 12-13); adding an addition loss of $5,000 for accounting expenses incurred by Morton and reimbursed by Valley Forge (Motion ¶¶ 14-15); and adding $29,402.05 in prejudgment interest. Motion ¶¶ 16-21.

***Hearing*** At the November 15, 2023, hearing, the government adamantly opposed the motion, and the court ordered a briefing schedule. At the hearing, the government questioned whether defendant Schmidl received proper notice of the motion, despite Movants filing proofs of service for notice that they sent Schmidl for the original hearing date (10/25/23, Dkt. 61) and an amended notice for the rescheduled hearing date (11/15/23, Dkt. 67). Prior to the November 15, 2023, hearing, Schmidl had filed no objection to the motion to amend and since then has filed no objection. The government's response brief (Dkt. 69) does not challenge notice. At the November hearing, the government also challenged the request for interest. The government explained to the court that due to Schmidl's poor economic circumstances, *at sentencing* the court waived Schmidl's "interest" liability. The implication was that the court had already considered the "interest" issue at sentencing and had resolved Movants' *prejudgment* interest request. However, the interest the court waived at sentencing was Schmidl's liability for *post-judgment* interest as authorized under 18 U.S.C. § 3612(f)(3). Dkt. 46, J&C, p. 7 of 8. Not

2

surprisingly, the government's response brief abandons its "res judicata" challenge to interest. Finally, at the hearing the government argued that the existing, flawed restitution order was somehow the responsibility of Morton & Associates. Again, the government's response brief abandons this position.

### *Response and the remaining contested issue.*

*As to issue one*, the government's response states that it does not oppose the request "to substitute the insurer for $25,000 of the loss [i.e., $171,708] with the law firm's amount reduced accordingly [i.e., to $146,708]." Response, p. 3.

*As to issue two*, Movants are withdrawing the request with the proviso that the amended restitution order should reflect that the restitution owed Morton & Associates is $146,708 and the amount owed to Valley Forge is $25,000 (and not a $141,708/$30,000 split as explained in the following paragraph). Movants withdraw the request not for any reason raised in the government's response but based on information about which Movants only recently learned. Stewart Dec. ¶¶ 3, 6.

The government, Morton & Associates, and Valley Forge exchanged emails in August 2020, agreeing that the restitution presented to the court should be $176,708 split $146,708 to Morton & Associates and $30,000 to Valley Forge. Motion ¶¶ 3-4 and Ex. A. Despite that agreement, which the government's response brief neither mentions nor acknowledges breaching, in December 2020, the government submitted to US Probation a statement that the restitution losses were a total of *$171,708* split $141,708 to Morton & Associates and $30,000 to Valley Forge. Stewart Dec. ¶ 3. US Probation adopted these numbers, but apparently a clerical error occurring between

3

the Office of US Probation and the Clerk of Court prevented those numbers from being entered into the court's order of judgment and conviction. *Id.* at ¶ 6.

The request to increase the restitution by $5,000 was based on Movants' assumption that the government honored the parties' agreement, submitted loss amounts to the court consistent with that agreement, and an oversight resulted in the *agreed* amounts not being included in the final order. That assumption proved wrong as it is clear now that the government erroneously presented the loss total as $171,708, not $176,708. Stewart Dec. ¶ 3. Nonetheless, Valley Forge paid Morton & Associates $30,000, $25,000 toward the embezzlement loss of $171,708, included in the restitution order, and $5,000 toward accounting fees that are *not* included in the restitution order. It is undisputed that the restitution award should be revised to include Valley Forge for $25,000 and Morton's award reduced to $146,708.

*As to issue three*, the government's response glosses over its own lack of constitutional standing to oppose the interest request. That said, the government concedes as it must that the court has jurisdiction to adjudicate Morton & Associates request under 18 U.S.C. § 3664(d)(5) but disputes that the claim for prejudgment interest is "within the scope of § 3664(d)(5)." Response, p. 6. The government claims that Morton's prejudgment interest request does not meet the "good cause" standard under § 3664(d)(5). Response, p. 8. The government further speculates that the court would not have awarded prejudgment interest had the request been presented at sentencing. *Id.* Finally, the government questions the proof of loss for interest and questions the rate of prejudgment interest Morton & Associates requested. *Id.* at 9.

## Discussion

The government lacks standing to contest the request to add prejudgment interest to the restitution award. Nonetheless, the government's arguments are without merit. Morton has presented a valid claim to amend the restitution order.

### A. The government lacks standing to contest the motion to amend.

"[S]tanding is a constitutionally required component of a federal court's jurisdiction." *United States v. Bronke*, No. 01-cr-532, 2022 U.S. Dist. LEXIS 162943, at *17 (N.D. Ill. Sep. 8, 2022). In *Bronke,* the district court declined to grant relief to the government in a case like this, a post-judgment proceeding involving the amount of restitution. Among other things the court questioned whether the government had demonstrated standing to contest the restitution liability issues.

The Constitution grants federal courts the power to adjudicate disputes and that authority requires that "a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)**.** **"**The doctrine of standing implements this requirement by insisting that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision.'" *Adams*, 141 S. Ct. at 498.

"[T]o have standing, adverse parties must have 'a direct stake in the outcome . . . [rather than being] concerned bystanders.'" *Bronke* at *17 (*quoting Diamond v. Charles*, 476 U.S. 54, 62, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986)). Here, the government's statement of its "Interests" in this dispute fails to demonstrate that any

injury will befall the government should the court grant the motion to include prejudgment interest.  Response, p. 2.  Should the court grant the motion to amend, the prejudgment interest liability falls alone on the defendant, Edward Schmidl, who filed no objection.  The government will not be liable for the interest.  The government's statement of "Interests" in this matter proves only that it is a "concerned bystander" but lacks any stake in the outcome of the motion to amend.

In its response, the government claims standing because it has a statutory burden to prove loss amounts.  Response, p. 2 (*citing* 18 U.S.C. § 3664(e)).  However, § 3664(e) is a *sentencing* provision that allocates the burdens of proof between the parties to a criminal case, the government and the defendant.  Section 3664(e) says nothing about post-sentencing restitution matters like the one now before the court that is raised under § 3664(d)(5).  Section 3664(d)(5) explicitly allows the "victim" to petition the court post-judgment without designating who shall file such petition, the victim (pro se), the victim's personal attorney, or the government.  Obviously, it is the party who files the petition that carries the burden of proof under § 3664(d)(5), and in this case that is the victim's personal attorney, not the government.  The government further suggests that when the victim, not the government, makes a request under § 3664(d)(5), the government "has a duty to protect the judgment" and "has a duty of condor to the court. "  Response, p. 2.  However, the government does not point to what statute makes the United States duty bound to intervene in a dispute in which it has nothing at stake and the government does not say against

6

what harm it is supposedly "protecting the judgment." As such, the government fails to demonstrate it has standing to oppose the interest request.

A similar circumstance was addressed in *United States v. Ray*, 337 F.R.D. 561, 564 (S.D.N.Y. 2020). Fed. R. Crim. P. 17(c) gives a crime victim independent authority to move to quash a criminal defendant's subpoena seeking personal or confidential information about a victim and requires the defendant to move for the court to issue such a subpoena with notice to the affected victim. In *Ray*, despite the fact that some of the victims were given notice and did not object to the issuance of a subpoena for the victim's medical records, the government moved to quash the subpoenas and premised its right to do so on the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8), arguing under that under the CVRA it was duty bound to protect the victims' right to "dignity and privacy." *Ray* held that the government lacked standing to quash the subpoenas because the defendant provided notice to the victims and the victims did not ask for the targeted records to be kept confidential. 337 F.R.D. 561, 571. *Ray* emphasized that the rule itself requires notice to be given to the victim, "'so that the *victim* can move to quash or modify the subpoena.'" *Id.* at 570 (*quoting* Fed. R. Crim. P. 17(c) with emphasis in original). *Ray* acknowledged the government's duties under the CVRA, but the government would have standing only if "the victim herself wants the government to assert it [her rights under Rule 17(c)]." *Id.* at 571.

The same logic applies to this case. Section 3664(d)(5) explicitly allows "the *victim*. . . to petition the court for an amended restitution order." 18 U.S.C. § 3664(d)(5) (emphasis supplied). If Morton & Associates had asked the government

for assistance, obviously the government would have standing to assert the *victim's* claim, but that is not the case. Moreover, § 3664(d)(5) assigns the government *no* role should a victim, pro se or through a private attorney, independently petition for relief. *Cf. Ray*, 337 F.R.D. at 570 (S.D.N.Y. 2020) (Rule 17 does not give the government a role to play in quashing or modifying a subpoena when a victim declines to do so).

The burden was on the government to establish its standing. *Bronke* at *17 (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The government failed to establish standing. Thus, its objections are merely those of an "interested bystander" and should be given no weight. Nonetheless, the objections are meritless.

B. **The issue of standing aside, the government's objections lack merit.**

The government does not dispute that the court has statutory jurisdiction to consider Morton & Associates' request for prejudgment interest under § 3664(d)(5), but disputes Morton's contention that the prejudgment interest claim meets the "good cause" standard under § 3664(d)(5). Response, p. 8. The government further speculates that the court would not have awarded prejudgment interest had the request been presented at sentencing. *Id.* Finally, the government questions the proof of loss for prejudgment interest and the rate of prejudgment interest Morton & Associates requested. *Id.* at 9.

1. **Good cause**

As set forth in the motion and supporting affidavit, for its "good cause" showing Morton & Associates contends that it completely relied up the government's attorneys as to what was and was not a compensable restitution loss, the government never

8

advised him that prejudgment interest is a compensable loss, and that the failure of the government's attorney to include prejudgment interest was clear error under the CVRA and MVRA. Motion ¶¶ 17-20 and Morton Aff. ¶¶ 3-7. Rather than addressing the issue head on, the government mischaracterizes Morton's good cause argument as one *alleging that a victim obtaining post-judgment legal advice that shows the government committed legal error is good cause.* Response, p. 8. That is *not* what Morton argues; rather, Morton argues that the *government's failure* to properly counsel a victim as to compensable losses demonstrates good cause. The government argues that "the United States does not have an obligation to inform victims about possible legal arguments they might want to make with respect to restitution." *Id.* at 10. This is astonishing considering the government's acknowledgment that it has the statutory burden to prove restitution loss (*Id.* at 2), and that in doing so the government is obligated to vindicate a victim's right under the CVRA to "full and timely restitution." Motion ¶ 20. The government certainly has an obligation to inform victims about legal arguments that provides the victim with "full restitution," which under *Shepard* "includes prejudgment interest." 269 F.3d at 886.

### 2. District Court's discretion to award at sentencing

Every circuit court to have considered the question, including the Seventh, agrees that prejudgment interest is a necessary and compensable element of loss for

criminal restitution purposes.[3]

The government argues that at sentencing the award of prejudgment interest was merely discretionary, suggesting this court would not have awarded it. Response, p. 8. This is erroneous. The Seventh Circuit has made clear that regardless of whether restitution is discretionary or mandatory, once the district court makes a determination that the defendant is liable for restitution, the MVRA "mandates that the court order 'full' restitution.'" *United States v. Day*, 418 F.3d 746, 756 (7th Cir. 2005) (emphasis in original). Thus, proven, compensable losses are not something the district court has discretion to *not* include in a restitution order. Obviously, the court retains the discretion to determine whether the circumstances call for the award of interest, but the government's brief does *not* contest that the circumstances of this case warranted a prejudgment interest award. And the government presented no evidence that Morton & Associates, a law firm, would not

---

[3] *United States v. Corey*, 77 F. App'x 7, 12 (1st Cir. 2003); *United States v. Qurashi*, 634 F.3d 699 (2d Cir. 2011); *United States v. Fumo*, 655 F.3d 288, 321 (3d Cir. 2011); *United States v. Hoyle*, 33 F.3d 415, 420 (4th Cir. 1994); *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990); *United States v. Simpson*, 8 F.3d 546, 552 (7th Cir. 1993) (under VWPA); U*nited States v. Shepard*, 269 F.3d 884, 886 (7th Cir. 2001) (under MVRA); *United States v. Gordon*, 393 F.3d 1044, 1059 (9th Cir. 2004) *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684, 201 L. Ed. 2d 1 (2018); *United States v. Patty*, 992 F.2d 1045, 1050 (10th Cir. 1993); and *United States v. Huff*, 609 F.3d 1240, 1247 n.4 (11th Cir. 2010) (observing but not holding that "restitution may include prejudgment interest").

!!

have put the stolen funds to productive use absent Schmidl's embezzlement. *See*, *e.g.*, !
*United States v. Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011) (burden is on *opponent* of
prejudgment interest to show the victim would *not* have made productive use of the
stolen funds).

The award of prejudgment interest in this case—a proven, compensable
loss—would not have been "discretionary" as the government argues but a necessary
result under the Mandatory Victim Restitution Act.

### 3. Rate of interest & proof of loss

The government claims that even if the court were to grant the request for
prejudgment interest, Morton & Associates submitted the wrong rate of interest (i.e.,
5 percent, Illinois's statutory prejudgment interest rate for plaintiffs/victims whose
money was converted). Response, p. 9. The government claims the rate should be
what the stolen funds "would have earned" but for the theft; the government strongly
implies that the victim must prove that rate by also proving that the stolen funds
were held in an interest-bearing account and proving what interest rate the funds
would earn in that account. *Id.* (*citing United States v. Qurashi*, 634 F.3d 699 (2d
Cir. 2011) & *United States v. Edwards*, 19 F. Supp. 3d 366, 376 (D. Mass. 2014)). The
government misconstrues the authorities.

The leading case on the issue of prejudgment interest liability and the one
misconstrued by the government is *United States v. Qurashi*, 634 F.3d 699 (2d Cir.
2011). *Qurashi* "hold[s] that the MVRA allows a sentencing court to award
prejudgment interest in a criminal restitution order to ensure compensation 'in the

full amount of each victim's losses.'" *Id.* at 704 (quoting 18 U.S.C. § 3664(f)(1)(A)). A secondary issue in that case was based on the defendant's objection that the victim did not prove that the source of the stolen funds was "specific investment accounts whose gains and losses between the date of the fraud and the date of the sentencing could be tracked." *Id.* at 702.

*Qurashi* rejected the rule suggested by defendant's argument, which would place a burden on victims to prove how they would have used the stolen funds—with, for example, proof that the funds would have been in an interest-bearing account earning "x" interest rate. *Qurashi* said the defendant's argument assumed victims "store their reserves [of money] under mattresses for safekeeping" so victims must prove otherwise. *Id.* at 703. However, "the MVRA does not impose such a requirement." *Id.* *Qurashi* held that the better rule was that the burden of proof was on the party *opposing* prejudgment interest; thus, *Qurashi* held that "in the absence of evidence that [the victims] would *not* have put the stolen money to productive use," it would uphold the district court's award of prejudgment interest. *Qurashi*, 634 F.3d at 705 (emphasis supplied).

As far as Movants' research shows, no court has held that prejudgment interest is awardable to only those proving the funds would have earned interest. The government misconstrues the case it cites for this proposition, *United States v. Shepard*, 269 F.3d 884 (7th Cir. 2001). Certainly, the government asserts, and as *Shepard* indicated, prejudgment interest is due under the MVRA because the stolen funds "came from an interest-bearing account." *Id.* at 886. However, the holding of

the case is *not* that interest is only awardable under the MVRA with proof of an interest-bearing account. The better interpretation of *Shepard* is that the fact that funds were stolen from an interest-bearing account negates the argument that the victim "would not have put the money at issue to productive use." *Qurashi,* 634 F.3d at 705.

The government also misconstrues *Qurashi* when it claims that case is authority for prescribing a certain rate of interest. Response, p. 9 (stating that the correct rate under *Qurashi* is the "interest rate the money would have earned" had the theft not occurred). In *Qurashi,* the restitution order "included prejudgment interest at a rate of 4 percent." 634 F.3d at 701. While challenging the award of prejudgment interest, the *Qurashi* defendant did not "challenge the rate." *Id.* at 702. Thus, as the *rate* of interest was not at issue, the case could set no precedent concerning the proper rate of prejudgment interest under the MVRA.

The Seventh Circuit has not ruled on the correct rate a district court should use in MVRA cases for calculating prejudgment interest and our research has not found any fixed rule in other circuits or districts. In a different legal context, the Seventh Circuit held that prejudgment interest should be computed at the rate the defendant would have had to pay for unsecured credit. *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1311-35 (7th Cir. 1992). The current interest rate for unsecured debt is in a range with a low point of 5.91 percent and an average overall

rate of 20.68 percent.[4]    Alternatively, the court may want to consider the post-judgment interest rate applicable to federal criminal judgments, which in Schmidl's case would be  4.53 percent.[5]

The rate suggested by Morton & Associates is the state prejudgment interest rate of 5 percent.  Motion to Amend ¶ 8.  This rate is the most appropriate as it is the rate Illinois law sets for prejudgment interest in the kind of circumstances presented in this case (theft).  *Id.*  Moreover, both victim and defendant are citizens of Illinois and so it is not unfair to determine the appropriate rate by looking to state law.  The two alternatives—unsecured loan rate (5.91 percent) or federal post-judgment interest rate (4.53 percent)—yield a comparable result and demonstrate the fairness of using the Illinois prejudgment rate.

### C.  Adding prejudgment interested is merited by statute and the facts.

The circumstances warranting the award of interest are met in this case.  It is clear that Morton & Associates, a law firm, would have otherwise put the funds

---

[4] The publication "Business Insider" tracks the rates for personal loans and the rates are found at the Business Insider's Website. "Average Personal Loan Interest Rates," *Business Insider*, https://www.businessinsider.com/personal-finance/average-personal-loan-interest-rates (last visited, Jan. 3, 2024).

[5] Section 3612(f) of Title 18 provides rate of interest for a federal criminal judgment, which fluctuates according to a designated Treasury Department instrument.  *Id.*  A table of the rates for 2023 is found here: https://www.casb.uscourts.gov/post-judgment-interest-rates-2023.  The rate for the week ending 4/7/23 is 4.53%.  The applicable rate is derived from the judgment date, 3/29/23, and the instructions set forth in as set forth in 18 U.S.C. §§ 3612(f)(1) & (2).

embezzled by Schmidl to "productive use." *Qurashi*, 634 F.3d at 704 (approving prejudgment interest on money obtained by fraud from an insurance company despite *no* evidence that funds would otherwise have been kept in an interest-bearing account because a business is presumed to put money to productive use). Morton & Associates has shown "good cause" as demonstrated by its complete reliance on the government; Morton's communication problems with the government that were caused by the government; the government's failure to seek prejudgment interest; and Morton & Associates' diligent action to seek relief as soon as it discovered its additional loss. Moreover, no party with standing has contested Schmidl's request under § 3664(d)(5) for an award of prejudgment interest.

### Conclusion

For the reasons set forth in the motion for an amended restitution order and in the foregoing brief, Movants request that this court enter an order amending the restitution order.

Respectfully submitted,

STEVEN J. MORTON & ASSOCIATES
VALLEY FORGE INSURANCE COMPANY

THE PEACOCK LAW GROUP

By: s/ Joseph A. Stewart
JOSEPH A. STEWART
Principal Attorney
161 North Clark Street, Suite 1600
Chicago, Illinois 60601
(312) 741-1070
joseph.stewart@thepeacocklawgroup.com

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 20 CR 382 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| EDWARD SCHMIDL, | ) | |
| | ) | |
| Defendant. | ) | |

## **DECLARATION**

Joseph A. Stewart declares under oath that:

1.　　I am the attorney representing Steven J. Morton & Associates, Ltd., the named victim in the referenced case to whom the court awarded restitution, and Valley Forge Insurance Company, who covered a portion of Morton's losses.  I submit this declaration in support of the motion for an amended restitution order and the facts set forth are based on information personally known to me.

2.　　Attached to our motion is a 2020 email exchange between the U.S. Attorney's Office, Morton & Associates and Valley Forge Insurance Company.  Valley Forge insured Morton & Associates for the type of loss occasioned by defendant Schmidl's fraud. Valley Forge paid Morton $25,000 against the $171,708 embezzlement loss plus an additional $5,000 for the expense of accounting services Morton & Associates incurred to determine the exact amount Schmidl embezzled. Motion, ¶ 3 and Ex. A.  Thus, the loss total should have been $176,708 with $146,708 apportioned to Morton and $30,000 apportioned to Valley Forge.  However, the order of judgment and conviction sets the restitution at $171,708 payable solely to Morton & Associates.

3.　　On or about December 9, 2020, the U.S. Probation Office sent the court a Supplement to the PSR that deals with loss amounts (which includes a letter from the U.S. Attorney's Office to U.S. Probation).   Ex. 1.   The U.S. Attorney's Office communicated to U.S. Probation that the restitution loss amount was $171,708 with

$141,708 apportioned to Morton and $30,000 apportioned to Valley Forge. *Id.* This in turn was what U.S. Probation communicated to the court via the 2020 Supplement to the PSR. *Id.* The U.S. Attorney's Office communicated the wrong total restitution amount ($171,708 rather than $176,708) and the wrong apportioned amounts, amounts that were not what the parties had agreed to in their 2020 email exchange.

4.      In August 2023, I observed some of these errors and requested that the U.S. Attorney's Office file a corrective motion, but that office declined to do so.

5.      Thereafter, I filed a motion to amend the judgment order. I then requested that the U.S. Attorney take a position on the motion. Alternatively, I sought an agreed briefing schedule should we not be able to agree on what seemed like an obvious fix (the pre-judgment-interest issue to the side) to amend the restitution order. We were unable to agree on any of it.

6.      It was only after filing the motion to amend in October 2023 that I obtained a copy of the December 2020 Supplement to the PSR (noted above in ¶ 3). Then, in late November 2023, I had an exchange of emails with U.S. Probation (Meredith Clifton). I asked why the order of judgment and conviction reflected $171,708 payable solely to Morton & Associates despite what is set forth in the 2020 Supplement to the PSR. Ms. Clifton related her assessment that a clerical error in her office resulted in the correct figures not being updated in a program called "Rest Assured."

7.      I declare under penalty of perjury that the foregoing is true and correct other than when stated on information and belief.


      Signed January 5, 2024                    /s/ Joseph A. Stewart

FEDERAL RULES OF CRIMINAL PROCEDURE - 32(e)(2) - WHENEVER A PRESENTENCE INVESTIGATION REPORT IS PREPARED A COPY OF THE REPORT WILL BE PROVIDED TO THE DEFENDANT, THE ATTORNEY FOR THE DEFENDANT, AND THE ATTORNEY FOR THE GOVERNMENT. PARTIES ARE PROHIBITED, PURSUANT TO LOCAL RULE 32.1(j), FROM DISCLOSING THIS REPORT OR ITS CONTENTS TO ANY PERSON OR AGENCY WITHOUT THE WRITTEN PERMISSION OF THE SENTENCING JUDGE.

**UNITED STATES DISTRICT COURT**
**Northern District of Illinois**
**U.S. Probation Office**
**230 S. Dearborn Street - Suite 3400**
**Chicago, Illinois 60604-5702**

Honorable Sharon Johnson Coleman                    December 9, 2020

### SUPPLEMENTAL REPORT

RE:  Schmidl, Edward
Docket No:  0752 1:20CR00382-1
Disposition Date:  To Be Determined

Subsequent to the mailing of the presentence report, the undersigned has received the following additional information.

## PART A. THE OFFENSE

### Victim Impact

1.      The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. Per the attached Government's Version – Supplement, dated August 10, 2020, mandatory restitution in the amount of $171,708 is owed in total, $141,708 of which is owed to the victim law firm, and $30,000 of which is owed to the insurance company of the victim law firm. The government has requested that restitution first be paid to the victim law firm, and then to the insurance company.

2.      A Victim Impact Statement from the owner of the victim law firm is attached, which details the financial harm the defendant's crime caused to him, as well as the violation of trust he felt.

3.      An updated Victim Import Spreadsheet was provided by the government, as well as a redacted loss chart to be included in the Judgment and Commitment Order.

## PART C. OFFENDER CHARACTERISTICS

### Educational, Vocational and Special Skills

4.      ████████████████████████████████████████████████████████████████

# Exhibit 1



## PART D. SENTENCING OPTIONS

### Restitution

5.  **Statutory Provisions:** Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $171,708 shall be ordered in this case. Restitution is due and owing to the following victims: $141,708 to Steven J. Morton and Associates located at 212 W. Washington Street, Suite 1008, Chicago, Illinois 60606 and $30,000 to Valley Forge Insurance Company located at 55 W. Monroe Street, Suite 1800, Chicago, IL 60603.

6.  **Guideline Provisions:** Restitution shall be ordered. USSG §5E1.1.

Respectfully submitted,

*Meredith A. Clifton*

Meredith A. Clifton
U.S. Probation Officer
Telephone: 312-435-5529

Reviewed by:

*Malissa*

Malissa L. Groth
Supervisory U. S. Probation Officer

Enclosure: Government's Version – Supplement (including a Victim Impact Statement)

Updated Rest Assured Victim List
Redacted Restitution Chart

cc:

Jacqueline O. Stern
219 South Dearborn Street
5th Floor
Chicago, IL 60604
(312) 353-5300
jacqueline.stern@usdoj.gov

Michael D. Ettinger
12413 S. Harlem Avenue
Suite 203
Palos Heights, IL 60453
708-923-0368
craignor@me.com

Edward Schmidl, Defendant



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| *Jacqueline Stern* | *Dirksen Federal Building* | *(312) 353-5329* |
| *Assistant United States Attorney* | *219 South Dearborn Street, 5th Floor* | *Fax:(312) 886-3502* |
| | *Chicago, Illinois 60604* | *E-mail: jacqueline.stern@usdoj.gov* |

August 10, 2020

Meredith A. Clifton
U.S. Probation
55 E. Monroe - Suite 1500
Chicago, Illinois   60603

Re:   United States v. Edward Schmidl, 20 CR 382

## GOVERNMENT'S VERSION - SUPPLEMENT

Ms. Clifton:

This Supplement to the Government's Version is being submitted in order to provide a victim impact statement, and to provide an updated restitution chart.

Attached please find the following:

• A victim impact statement letter submitted by victim Steven J. Morton, the owner of the victim law firm.

• An updated restitution chart for the Clerk's Office.

• A redacted restitution chart to be attached to the J&C.

In terms of restitution, the government respectfully requests that the Court order that the defendant pay the restitution due to the victim law firm first, namely $141,708, and

1

when that restitution has been paid in full, the defendant pay the restitution due to the insurance company, namely, $30,000.

Very truly yours,

JOHN R. LAUSCH, JR.
United States Attorney

By:   *s/ Jacqueline Stern*
Jacqueline Stern
Assistant United States Attorney

cc: Michael Ettinger

C/O NIELSEN, ZEHE &
ANTAS, P.C. VALLEY FORGE
INSUR
$30,000.00
Amount: $30,000.00

C/O STEVEN J. MORTON
STEVEN J. MORTON &
ASSOCIATES
$141,708.00
Amount: $141,708.00

**Total Restitution:**
**$171,708.00**